## Bradford Oil Company *versus* Blair.

113　83
123　592
123　593

113　83
139　344

1. A. leased his farm to B. to explore for and produce oil, at a royalty of one eighth the production. The lease contained the following covenant: "To continue, with due diligence and without delay, to prosecute the business to success or abandonment; and if successful, to prosecute the same without interruption, for the common benefit of the parties." B. assigned an interest in said lease to C. and D., and they, with B., assigned it to E. Two wells were bored on the farm, both of which were producing wells. E. refused to bore any other wells. In an action of covenant brought by A. against E., for breach of the covenant above quoted, *Held*, that said covenant was not the personal covenant of B., but a covenant that run with the land, and therefore bound E.

2. It was not error for the Court to instruct the jury, that the damages for the breach of said covenant, would be found as follows: Ascertain how much more oil the plaintiff ought to have received than he actually did receive, and the value of it during the times when it should have been delivered to him; from this deduct the cost of producing, what ought to have been produced at the time, under the circumstances, and with the appliances then known; and add to this remainder the interest on it from the time when the oil ought to have been produced to the present time; and this will be the measure of damages sustained by the plaintiff.

May 15th, 1886. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *McKean county:* Of July Term, 1885, No. 21.

This was an action of covenant brought by James E. Blair against the Bradford Oil Company, to recover damages for a breach of covenant in an oil lease, wherein the plaintiff was the lessor, and the defendant, by various assignments, became the lessee. Plea, *non est factum*, and covenants performed *absque hoc.*

The following are the facts as they appeared on the trial before BROWN, P. J.:

On the 17th day of July, 1875, James E. Blair leased to L. G. Peck his farm in Bradford township, McKean county, containing one hundred and fifty-four acres, for oil purposes, at a one eighth royalty.

July 27th, 1876, Peck assigned to W. C. Chambers the undivided one half and to J. T. Jones the undivided one fourth interest in said lease.

On the 20th day of April, 1876, the Bradford Oil Company was organized, and on the 25th day of the same month Peck, Chambers and Jones assigned said lease of the Blair farm to said company.

The lease to Peck, whose interest therein became vested in the Bradford Oil Company, contained among other provisions, a covenant upon the part of Peck that he would " continue with due diligence and without delay to prosecute the business to success or abandonment, and if successful to prosecute the same without interruption for the common benefit of the parties aforesaid."

It was for the breach of this covenant that suit was brought.

Peck, Jones and Chambers went upon said farm in the summer of 1875 and drilled one well thereon, which was completed about the 1st of December of that year.

The Bradford Oil Company went into possession of said farm immediately after its organization in the spring of 1876, and drilled one well thereon, which was finished about the 1st of August, 1876.

These two wells were good, fair producers. The Bradford Oil Company became the owner of land, or the oil right therein, upon all but one side of the Blair farm, and drilled wells on said surrounding lands, all of which produced oil.

They did not drill any other wells on the Blair farm until October, 1878. Blair repeatedly notified them to go on and prosecute the business as required by the lease.

There was evidence to show that proper development of the farm required the drilling of a well to every five acres of land, and that with only one set of drilling tools a well could be completed every forty days.

That during two years in which the farm was not drilled, the defendant drilled several wells on its lands surrounding the Blair farm, near enough to the lines to drain oil from it to some extent.

The defendant claimed that the covenant to prosecute the business of developing and removing the oil from the farm without interruption, for the common benefit of the lessor and lessee, was, under the circumstances, complied with by the drilling of one well in 1875 and another in 1876.

The court instructed the jury as follows:

James E. Blair, the plaintiff, was the owner of a farm in Bradford township containing 154 acres of land, or thereabouts. By a writing bearing date July 17th, 1875, he leased the same to one L. G. Peck for the term of twenty years; Peck, his heirs and assigns, to have the sole and exclusive right to bore and explore for oil and other enumerated minerals, and to gather and collect the same.

By the terms of the lease Peck bound himself, his heirs and assigns, to give to Mr. Blair a one eighth part of the oil or other products of the land, and also to continue with due diligence and without delay to prosecute the business to suc

cess or abandonment, and if successful he further covenanted to prosecute the same without interruption for the common benefit of the parties; and by "common benefit of the parties" we now say to you (lest we might afterwards omit to say it), is meant to prosecute the same whenever it could be done so as not only to give a profit to the lessor who was expending no money, but to afford a profit to the lessee who was expending money.

On the 27th of July, 1875, Peck assigned an undivided one half of his interest under the lease to Wesley Chambers, and an undivided one fourth to J. T. Jones; on the 13th of May the defendant, the Bradford Oil Co., became the owner of the entire leasehold by assignment from Peck, Chambers and Jones, thus vesting in the Bradford Oil Co. the entire interest acquired by Peck under the lease from the plaintiff, and thus in law as we now say to you, imposing upon the defendant during the term of its ownership a liability to the same extent that Peck, the original lessee, was liable by the terms of the written contract.

On the 7th of January, 1881, the Bradford Oil Co. assigned all its interest under the lease to F. E. Boden and J. J. Carter, and for any failure to comply with the terms of the lease after that time the defendant is not responsible; and in order that your attention may not be taxed with inquiry into the character of the operations at a time not deemed essential by either party, we may here say what the counsel for the plaintiff has stated in your hearing during the trial, viz.: that the plaintiff does not claim to recover anything against the defendant for any failure to operate the lease with vigilance after the month of October, 1878.

Thus you will see that the issue here, so far as the lapse of time is concerned, is between the 13th of May, 1876, and some time in the month of October, 1878, a period of about two years and five months.

Now I ask you to bear this particularly in mind during your deliberations, that the time that transpired between the time that the defendant became the owner in May, 1876, and some time in October, 1878, is the period to which your attention will be directed; the plaintiff is now before the Court, claiming that the defendant did not during the time mentioned keep the covenants binding it to prosecute the business without interruption for the common benefit of the parties, and that by reason of its failure so to do he has sustained damages, for the amount of which he asks you to give him a verdict.

Is the claim of the plaintiff that the defendant during the time mentioned failed to comply with the obligations of the

lease, sustained by the evidence? And if so what amount of damages will fairly compensate him for such failure—are the two main questions now to be answered by the Court and jury.

The evidence shows that the lessee and his assigns were successful in their explorations for oil, and that the business of producing the same has been prosecuted without interruption. The remaining question then is, did the Bradford Oil Co. during the two years and five months or thereabouts, fail to prosecute the business of exploring for and gathering oil in such manner as, under the circumstances, was for the common benefit of itself and the plaintiff? If it did so fail, the plaintiff ought to recover; if it did not, the plaintiff ought not to recover.

The duty of interpreting the lease, and of defining the obligations its terms impose, is exclusively for the Court; and your duty as jurors is to take our interpretation as the correct one, and apply the evidence to its meaning as we define it. In the exercise of this duty we say to you that the agreement to prosecute the business for the common benefit of the parties, imposes no obligation on the defendant to prosecute the business to any greater extent than could reasonably be done and leave a profit to the defendant. In other words, if the knowledge and skill of persons engaged in the oil producing business and the machinery and appliances then known, and the prices of the product, were such that the business could not be then carried on with a profit to the defendant after giving to the plaintiff the agreed royalty, then we think the defendant was not bound to prosecute the same to any greater extent than was done; but if it could have been prosecuted profitably to a greater extent to the mutual benefit of the parties, and ought to have been under the circumstances, then the defendant was bound so to prosecute it, and if it has failed must respond in damages.

[The consideration of the lease, in part at least, was the agreement to render to Mr. Blair the one eighth of the product, and the stipulations of the lessee as set down in the agreement are, in our opinion, equivalent to a covenant on the part of the lessee and his assigns, that they will prosecute the business of boring and exploring for oil and gathering the same in a proper manner and with reasonable diligence, to the end that Mr. Blair should have the royalty or income in the contemplation of the parties at the time the agreement was made.] (Twelfth assignment of error.)

In determining whether the defendants during the time they owned the lease—that is to say, from some time in May, 1876, or during the time for which the plaintiffs claim they are re-

[Bradford Oil Co. v. Blair.]

sponsible—from some time in May, 1876, to October, 1878—did prosecute the business in a proper manner and with reasonable diligence, I think it proper to say that you ought not to find against the defendant by reason of its failure to operate the southeasterly part of the farm, unless the evidence satisfies you that such failure was a want of diligence under the light and knowledge then existing, and in this connection you will call to mind the fact that prior to some time in the fall of 1878 there had been no operations in that immediate locality; you should in determining the question of whether the defendant has prosecuted the business with reasonable diligence, consider the quality of the land for oil producing purposes as it was then generally known or supposed to be; the cost of production; the price of the product; the knowledge and skill then generally possessed by persons engaged in the business in the locality; and whether the appliances used and the manner of operating was or was not such as men ordinarily skilful in the business usually resorted to in the location and at the time mentioned, and whether the extent of their operations and the vigor of their prosecution was or was not such as was reasonably to be expected under the then existing circumstances.

You must not allow the plaintiff any damages for the price of oil drained or claimed to be drained from the land by reason of operations on the adjoining lands; but inasmuch as what is reasonable diligence is a question to be determined by the light of the then existing circumstances, [you may take the operations on the adjoining lands into account so far, and only so far, as they enable you to answer the question whether the defendants were or were not wanting in ordinary diligence.] (Thirteenth assignment of error.) And we further say that you must not find the defendant wanting in diligence merely from the fact (if it is a fact) that it did not sink an equal or any number of wells opposite or in proximity to wells that were sunk on the adjoining lands and near to the plaintiff's line; [the defendant's duty is not to be measured by what was done on the adjoining lands, except so far as what was done bears upon the main question running through this part of the case and which we repeat: was the defendant —taking all the circumstances, including the operations upon the adjoining property, into account—wanting in diligence in its operations upon the plaintiff's land?] (Fourteenth assignment of error.) I emphasise the injunction that the duties and obligations of the defendant—and ask you to particularly bear that in mind—that the duties and obligations of the defendant must not be judged by the light and knowledge obtained after its ownership of the plaintiff's land had ceased,

[Bradford Oil Co. *v.* Blair.]

but by such as existed or prevailed during the existence of such ownership; now, so judging, you will ascertain from the evidence whether the defendant did all that he could be reasonably expected to do in the business of developing the land and producing the oil therefrom; if it did your verdict would be for the defendant; if it did not it should be for the plaintiff, for such amount as will compensate him fairly for the damages he has sustained; [and in regard to the measure of damages we instruct you in this way: In case you find that the defendant did not use due diligence in operating plaintiff's premises you will ascertain as well as you can from the evidence how much more oil the plaintiff ought to have received than he actually did receive, and the value of it during the times when it should have been delivered to the plaintiff; and from this you will deduct the cost of producing what he ought to have received at the time and under the circumstances and with the appliances then known; and upon such balance you will compute the interest from the time it ought to have been delivered to the plaintiff down to the present time.] (Twenty-first assignment of error.) I am not able to lay down to you any more definite rule than this. I am not able to say to you to what conclusion you will arrive from the evidence in this case; as counsel on both sides have said, the question for the jury may be a difficult one. Counsel have commented fully on the evidence, and it is not our purpose to go over it in detail.

I repeat, then, you will find as best you can from the evidence, in case you find that the plaintiff ought to recover, how much more oil he ought to have received than he actually did receive during the time in controversy, its value, and from that you will deduct the cost of producing out of the ground as near as you can ascertain it, from the evidence, at the time and under the circumstances, and you will strike a balance and on that balance find a verdict in favor of the plaintiff.

Mr. Elliott: I have understood that the Supreme Court have recently said that it is error in a verdict for damages that they should add the interest.

The Court: That is a play upon words; we say you may add interest by way of damages.

This, in addition to the points presented, covers all we have to say, and the responsibility for a determination of the case will then be with you.

On the part of the plaintiff we are requested to say:

1. That by the terms of the lease from Blair to Peck, the lessee and the defendant under him having prosecuted the business of exploring for oil to success, were then bound to prosecute the business of exploring and drilling for oil and

[Bradford Oil Co. v. Blair.]

gathering and collecting the same, without interruption, for the common benefit of the parties.

This point is affirmed.   (Fifteenth assignment of error.)

The defendant presents the following points:

1. If the covenant to prosecute the business, for the alleged breach of which the plaintiff sues, relates to the erection of new rigs and the drilling of new wells, it does not run with the land nor bind the defendant; and if it relates to the uninterrupted operation of the wells drilled and the continued production of oil therefrom, then under the undisputed facts there is no breach shown.

The two propositions embraced in this point are fully covered in the general charge.

2. The covenants declared on, if construed to relate to the drilling of new wells and the erection of new derricks and buildings, fails to fill the requirements of a covenant running with the land in that it related to things not *in esse* at the making of the covenant, and contemplated a depletion and waste of the land and not its preservation in that it relates to property and the use of property on the land made personal by the terms of the lease, and not any permanent structures or improvement on the land, and is shown by the language used by the parties to have been intended by them only as a personal covenant.

We think it is sufficient to say that the covenant on which the plaintiff bases his right to recover is a covenant running with the land.   (Sixteenth assignment of error.)

3. The liability of the defendant in this suit, if any, is only on the express covenants declared upon, and if the evidence does not show a violation of these there can be no recovery.

If by this point it is meant that there can be no recovery on the covenants to be implied from the language expressly used, it is refused.   (Seventeenth assignment of error.)

4. The defendant, if liable at all, is liable in this case only for a breach of the covenants which occurred while the title to the premises was in the defendant, and not for anything that occurred before or after.

This point is affirmed.

5. Under the pleadings and evidence the plaintiff can not assert nor recover for any alleged breach of covenants by the defendant in not drilling oil wells during the time he was denying its right to so drill, and was by interference, notices, writs of ejectment and estrepment, using every means known to the law to prevent it from drilling and operating the premises in question.

We answer this point by saying that so far as the actual

prosecution of the work was prevented and suspended by the matters recited in this point, there can be no recovery of damages for the failure to prosecute the work during the time the business was so suspended. (Twenty-third assignment of error.)

6. To rightly judge and determine the legal obligations of the lessee under the terms of the lease in evidence, it must be read and its obligations determined in the light of the circumstances existing at the time the lease was executed; with such additional knowledge as the defendant and others who were engaged in operating territory in that section of field had obtained by experience at the time of the alleged breach, and not by the light and knowledge afterwards obtained by subsequent operations in that field.

This point is affirmed.

7. The covenants of the lease in question did not require the defendant, after a well drilled and oil found, to drill any other or additional wells if the defendant, with the knowledge it then possessed, had reason to believe, and did believe that it could not drill such additional wells without loss to itself.

This point is answered by saying as we have said in the general charge, that the liability of the defendant is dependent on the question of whether the defendant, taking all of the circumstances into account was or was not wanting in ordinary diligence. (Eighteenth assignment of error.)

8. The covenant to prosecute the business without interruption, for the common benefit of both parties, does not define such business to be the drilling of oil wells, and if after two wells were drilled and got to producing they were without interruption pumped and kept producing for the common benefit of both parties, then said covenant was complied with.

This point is refused. (Nineteenth assignment of error.)

9. Under any aspect of the case there is no evidence of any breach of covenant by the defendant until after the completion of the second well known as "Blair well No. 2," and a reasonable time thereafter allowed to drill others.

This point is affirmed.

10. The covenant to prosecute the business without interruption doesn't require the drilling of more than one well at a time, if the drilling and preparation therefor is continuous.

This point is answered by repeating that the liability of the defendant depends on the question of whether, taking all the circumstances into account, the defendant was or was not wanting in ordinary diligence. (Twentieth assignment of error.)

[Bradford Oil Co. v. Blair.]

11. Under the evidence the plaintiff can recover, if at all, only for such injuries and losses as necessarily resulted from the defendant's breach of the covenant declared upon, and as no such necessarily resulting damage has been .shown, the verdict, if for the plaintiff, can only be for nominal damages.

This point is refused.

12. Under the pleadings and evidence neither the alleged drainage of oil from plaintiff's farm by wells on adjoining lands, nor any difference in the price of oil at different dates afford a proper basis for the computation of damages.

This point is affirmed, as we have already explained in the general charge.

13. To recover damages more than nominal they must be shown with reasonable certainty by the evidence, and not left to speculation and conjecture, and that has not been done in this case.

This is answered by saying that the same is correct, except so much as asks us to say as a question of law that there is no evidence in this case except such as is speculative and conjectural. (Twenty-second assignment of error.)

Thus, gentlemen of the jury, you are brought back to a consideration of the questions, first: During the time to which your attention has been called, was the defendant wanting in ordinary, reasonable vigilance, such as men usually prudent and watchful of their own interests, give to their own business? If it was, then it is responsible, but if it was not, then it was not responsible, and the verdict should be for the defendant. If you find that the defendant was wanting in ordinary diligence, then you are to determine the question of the amount, upon the principles that I have stated.

Verdict for the plaintiff in the sum of $7,500, and judgment thereon, whereupon the defendant took this writ, assigning for error, *inter alia*, the answer of the Court to the several points as above shown, and those portions of the general charge included within brackets.

*C. W. Stone* and *F. L. Blackman*, for the plaintiff in error. —The covenant does not run with the land, and does not bind the defendant. It is the personal covenant of Peck, the first lessee. It does not name "assigns:" Spencer's Case, 1 Smith's Leading Cases, 137; Cathcart *v.* Bowman, 5 Barr, 319; Herbaugh *v.* Zentmyer, 2 Rawle, 160; Masury *v.* Southworth, 9 Ohio, 346.

We aver that the Court was in error in instructing the jury as stated in the twelfth assignment, that the agreement to pay a royalty of the oil produced raised an implied covenant to operate the premises with reasonable diligence, for the reason

[Bradford Oil Co. *v.* Blair.]

that the parties themselves had fully provided by express covenants how and when said premises should be operated.

"Implied promises or promises in law exist only when there is no express promise between the parties, *expressum facit cessare tacitum.* Hence, says Chitty, a party cannot be bound by an implied promise when he has made an express contract as to the same subject matter, which is certainly sound law, unless the express contract has been rescinded or abandoned:" Hawkins *v.* United States, 6 Otto, 689; Vanderkar *v.* Vanderkar, 11 John., 135; Frost *v.* Raymond. 2 Gaines' Cases, 192; Sumner *v.* Williams, 8 Mass., 201; 2 Washburn, Real Prop., 671.

The plaintiff claimed no special damages in the declaration, but only in the most general terms. He could recover then, if at all, only such damages as necessarily resulted from defendant's default: 2 Greenleaf on Evidence, 254; 1 Chitty's Pleadings, 338, 396; Bishop Manufacturing Co. *v.* Endley, 23 Conn., 212; Squir *v.* Gould, 14 Wend., 160; Stanfield *v.* Phillips, 28 P. F. S., 76; 2 Wait's Actions and Defences, 434.

What damage, if any, necessarily resulted to plaintiff? It is not disputed that he got his oil, only he got it later than he claimed he should have done. His only necessarily resulting damage was the loss of the use of the oil, or of the money it would bring, in other words, the interest on its value, from the time it was produced: Cherry *v.* Miller, 1 Pittsburgh Leg. Jour., 98.

If this is not to be adopted as the measure of damages, then it would seem by analogy to other cases, the plaintiff should recover, if at all, the difference between the actual cost of producing the oil and what he had agreed to pay for producing it, viz.: seven eighths of it. He was entitled to one eighth of the oil. To pay for producing that, he had agreed to give the other seven eighths. If not produced for him, according to agreement, he might produce it himself and recover what it cost him to do so, less what he has agreed to pay for doing it, that is, the cost of production less the value of the seven eighths he has agreed to give.

*B. D. Hamlin* and *M. F. Elliott (D. H. Jack* and *Watrous* with them), for defendant in error.—The covenant was not a personal one, but one that run with the land.

In Spencer's Case it was resolved as follows: "If lessee for years covenants to repair the houses during the term, it shall bind all others as a thing which is appurtenant, and goeth with the land, in whose hands soever the term shall come, as well those who come to it by act in law, as by act of party; for all is one having regard to the lessor. And if the law

should not be such, great prejudice might accrue to him; and reason requires that they who shall take benefit of such covenant, when the lessor makes it with the lessee, should on the other side be bound by the like covenant when the lessee makes it with the lessor: Smith's Leading Cases, vol. 1, p. 92; 3 Coke, 16.  See also Martin v. Clue, 83 E. C. L. Reps., 661; Shelby v. Hearne, 6 Yerger, 512; Harris v. Coulbourne. 3 Harrington, 338; Farley et al. v. King, 6 M. R. Rep., 17; Wilkinson v. Rogers, 12 Weekly Reporter, 119; Norman v. Wells, 17 Wend., 136; Brolaskry v. Hood, 6 Phila., 193; Streaper v. Fisher et al., 1 Rawle, 155; Herbaugh v. Zantmyer, 2 Id., 159; Wudner v. Foster, 2 P. & W., 23; Heir of Dunbar v. Jumper, assignee of Thompson, 2 Yeates, 74; Pollard v. Schaffer, 1 Dallas, 210; Fisher's Ex'rs v. Lewis, 1 Clark, 72; Jones v. Gundrim, 3 W. & S., 531.

This Court has already held that "the remedy on the covenant, to prosecute the business for the common benefit, was not by ejectment, but an action of covenant:" Blair v. Peck et al., 1 Penny., 247.

We hardly expected that the plaintiff in error would complain of the measure of damages laid down by the Court.  If the Court had made the subject a study, no measure of damages could have been devised and applied to the facts of the case which would have so reduced the measure of recovery by the plaintiff as the one adopted by the Court.

If the Court had permitted the plaintiff to recover the difference between the market price of oil at the time the wells should have been drilled and the oil produced and the price when, more than two years afterwards, he did receive his royalty from the wells subsequently drilled, the verdict would have been more than twice as great as the one rendered.

According to the rule laid down by the Court, the plaintiff was compelled to pay for the cost of producing the oil which the lessee had agreed to deliver to him free of charge.  If Blair had complained of the ruling of the Court in this respect he might have done so with some justice, but surely the defendant cannot be permitted to take advantage of an error, if error it was, which enured largely to its benefit.  The counsel for the plaintiff in error concede, in their arguments, that the rule adopted by the Court would seem to be injurious to the plaintiff rather than to the defendant.  If so, what reason has the defendant to complain?

The opinion of the Court was filed May 31st, 1886.

PER CURIAM.  The agreement imposed on the company an obligation to use due diligence in operating on the premises.  That was necessary for the common benefit of both

[Bush *v.* Bender.]

parties.  We do not think damages for not securing flowing oil are to be ascertained exactly as if it were a stationary mineral.

If oil be not utilized at a proper time it may be lost forever by reason of others operating near by.  Not so with a stationary mineral.  It remains for future development.  While there is some difficulty in the way the damages were ascertained in this case, yet no better or more accurate manner is pointed out.

Looking at the whole case we see no sufficient cause to justify a reversal of the judgment.

Judgment affirmed.