## JULIAN PETROLEUM CORPORATION v. COURTNEY PETROLEUM CO.

Circuit Court of Appeals, Ninth Circuit.
October 31, 1927.

Rehearing Denied December 5, 1927.

No. 5111.

**1. Damages ⚖==18—Generally remote, uncertain, and speculative damages are not recoverable.**

As a general rule, remote, uncertain, and speculative damages are not recoverable.

**2. Courts ⚖==107—Language of court's opinion must be read in light of facts before it.**

In reading a judicial opinion to determine the rule of law laid down, language of the court must be read in the light of the facts before it.

**3. Appeal and error ⚖==1048(2)—If expert opinion evidence respecting damages from failure to complete oil well was competent, mere computation to show exact amount thereof was not prejudicial.**

If it was competent for expert witnesses, in action for damages for failure to drill and complete oil well as agreed, to express their opinions as to the quantity of oil that could have been produced if drilling had been completed, the cost of operation, and the value of the oil produced, the mere computations or additions by such witnesses to show exact amount of damages suffered was not prejudicial error.

**4. Evidence ⚖==525—Expert testimony as to value of oil that could have been produced, if well had been completed, held admissible as to damages.**

In action for damages for failure to drill and complete oil well as agreed, admission of testimony of experts as to the fact and amount of oil which could have probably been produced, if well had been completed, duration of production, cost of production, and price probably obtained, *held* not error, as against objections that damages claimed were too uncertain, remote,

and speculative; weight of such testimony being for jury.

**5. Mines and minerals ⬦⟹78(5)—Forfeiture clause in oil and gas lease is for lessor's benefit, and he may declare forfeiture, or allow contract to stand and sue for damages.**

Forfeiture clause in oil and gas lease is for lessor's benefit, and he may take advantage of it or not, as he chooses, by declaring forfeiture of contract, or by allowing contract to stand and suing for damages for breach.

**6. Appeal and error ⬦⟹928(1)—In absence of exceptions to instructions, appellate court must presume issues were properly submitted.**

In absence of exceptions to the instructions given, appellate court must presume that issues were properly submitted to the jury.

**7. Mines and minerals ⬦⟹97—Assignment of oil and gas lease, providing for certain services by assignor and sharing of profits, held not to create partnership.**

Assignment of oil and gas lease, requiring assignee to complete drilling of well, and providing that assignor should perform certain services and receive as compensation therefor a portion of the profits realized, if any, *held* not to create a partnership relation between corporate parties, especially where contract expressly provided it should have no such effect.

**8. Joint adventures ⬦⟹5(1)—One joint adventurer may sue another at law.**

One joint adventurer may sue another at law.

**9. Mines and minerals ⬦⟹78(1)—Mere breaking of machinery or other misfortune is no excuse for failure of assignee of oil and gas lease to complete drilling of well as agreed.**

Where assignee of oil and gas lease positively agreed to drill well to a certain depth, the mere breaking of the machinery, destruction of the well, or other misfortune, without assignee's fault, affords no excuse for failure to perform its contract.

In Error to the District Court of the United States for the Southern Division of the Southern District of California; Edward J. Henning, Judge.

Action by the Courtney Petroleum Company against the Julian Petroleum Company. Judgment for plaintiff, and defendant brings error. Affirmed.

McAdoo, Neblett, O'Connor & Clagett, Wm. H. Neblett, T. P. Conroy, J. Hart Willis, Anderson & Anderson, and A. G. Ritter, all of Los Angeles, Cal., for plaintiff in error.

Harold C. Morton, Byron C. Hanna, J. D. Fredericks, Jr., and Fredericks, Hanna & Norton, all of Los Angeles, Cal., for defendant in error.

Before HUNT, RUDKIN, and DIETRICH, Circuit Judges.

RUDKIN, Circuit Judge. This is a writ of error to review a judgment in favor of the plaintiff in an action to recover damages for breach of a drilling contract.

On June 3, 1925, Courtney Petroleum Company assigned to the Julian Petroleum Corporation an oil and gas lease on certain property in the Athens oil field in Los Angeles county, California, on which there was an uncompleted oil well drilled to a depth of 4,158 feet. At the same time a collateral agreement was entered into between the assignor and assignee wherein it was agreed as follows:

"2. The assignee shall within two days start operations on said well which is now practically drilled on said land, and diligently and continuously continue operations in good faith and in the usual and customary manner on said well with three towers of six men each until the well is placed on production.

"3. The assignee agrees that, in the event the partially drilled well now located on the property is put on production at a total depth of less than 4,600 feet, and said well is at any time for a period of five consecutive days making less than 350 barrels of oil for 24 hours, to kill said well and deepen the same in a first-class, workmanlike manner, in accordance with accepted oil field standards, to that certain producing horizon in the Athens field, commonly known as the Miley sand, which horizon is located approximately 5,000 to 5,100 feet. Assignee does not undertake to complete said well as a producing oil well at said depth, but does agree to properly drill the same to said depth, and there endeavor in the usual and customary manner to place the same on production. * * * *"

Two days later the assignee entered into possession and drilled the well to an additional depth of about 4 feet, when the drill pipe was twisted off, leaving a considerable portion of the pipe in the bottom of the well. An attempt was made to remove the broken stem or pipe, but without success. A further attempt was then made to drill to the side of and past the obstruction, but, after drilling to a depth of about 70 feet additional, the drill pipe was again twisted off, and all further attempts to complete the drilling were abandoned by the assignee. The present action was thereupon instituted by the assignor against the assignee to recover damages for failure to drill and complete the well as agreed.

Upon the trial the plaintiff below was permitted to prove its damages by expert

witnesses who testified substantially, that they had had several years' experience in geological work, or in the oil business; that they were familiar with the Athens field, and the location and the production of other wells in that field; that the well in question was favorably located; that, if drilled to the Miley sand, the well would, in their opinion, have produced oil; that the estimated cost of drilling the well to the Miley sand would be a certain amount; that the production of oil would be a certain quantity; that the cost of operation would be a certain amount; and that the oil would sell for a certain price. They further testified that this method of estimating the production of uncompleted wells is a familiar one in the oil business; that the government of the United States has adopted rules for estimating the future production of such wells; that the corporation commissioner of the state of California acts upon such estimates in authorizing the issuance of bonds and other sureties; and that oil property is bought and sold on the market on such estimates, the same as other real property changes hands on the opinion of experts in that line. The foregoing does not appear from the testimony of any one witness, but such is the general import of all the testimony.

At every stage of the trial the plaintiff in error objected to the competency of the above testimony, contending that the damages claimed were too uncertain, remote, and speculative. The several objections were overruled, and upon these rulings the principal assignments of error are predicated.

[1] No doubt, as a general rule, remote, uncertain, and speculative damages are not recoverable; but the difficulty lies in the application of the rule, not in the rule itself, and it seems to be firmly established in all the oil and gas producing states that damages such as are claimed here are recoverable, and that such damages are provable by experts, or by the opinions of well-informed persons upon the subject under investigation. 40 Corpus Juris, 1095; White on Mines and Mining Remedies, p. 235; Blair v. Clear Creek Oil & Gas Co., 148 Ark. 301, 230 S. W. 286, 19 A. L. R. 430; Dempsey Oil Co. v. Torrans (Tex. Civ. App.) 244 S. W. 855; Texas Pac. Coal & Oil Co. v. Barker (Tex. Civ. App.) 252 S. W. 809; Texas Co. v. Ramsower (Tex. Civ. App.) 255 S. W. 466; South Chester Tube Co. v. Texhoma Oil & Refining Co. (Tex. Civ. App.) 264 S. W. 108; Sinclair Oil & Gas Co. v. Bryan (Tex. Civ. App.) 291 S. W. 692; Wheeland v. Fredonia Gas Co., 92 Kan. 50, 139 P. 1010; Junction Oil & Gas Co. v. Pratt, 99 Okl. 14, 225 P. 717; Daughetee v. Ohio Oil Co., 263 Ill. 518, 105 N. E. 308; Bradford Oil Co. v. Blair, 113 Pa. 83, 4 A. 218, 57 Am. Rep. 442.

Thus in Wheeland v. Fredonia Gas Co., supra, the Supreme Court of Kansas said:

"This action was brought for failure to develop the land, a trial was had, and evidence was produced. Under these conditions, it was impossible for the appellees, there being no further development of the land, to prove the actual amount of damages they had suffered. The nature of the case is such that it is impossible to tell what a well will develop until it is sunk, and yet experts in oil territory are able to furnish reasonably accurate estimates of what a certain territory will produce, estimating from producing wells in the locality. This the appellants did in this case."

[2] The plaintiff in error contends that, regardless of the rule adopted in these cases, a different rule obtains in California, and that this court has itself adopted a different rule. Many California cases are cited, but none directly in point. Some might seem to support the right of recovery, and others to oppose it; but the facts were not the same, and the language of the court must be read in the light of the facts before it. The case relied on from this court is Blodgett v. Columbia Live Stock Co., 164 F. 305, where it was held that damages for breach of a contract such as this are necessarily indefinite, uncertain, and speculative, and for that reason it was competent for the parties to fix the amount of such damages by mutual agreement. But a stipulation for liquidated damages is valid in all cases where the damages are indefinite, uncertain, and speculative, or difficult of proof, regardless of whether they are recoverable at law or not, and a decision upholding a stipulation for liquidated damages has no bearing upon the question now before us.

[3] After expressing an opinion as to the cost of completing the well, the quantity of oil that would be produced, the cost of operation, and the value of the oil, some of the witnesses made computations tending to show the exact amount of damages suffered by the plaintiff in error, and this is assigned as error. But, if it was competent for the witnesses to express an opinion as to the amount of the different items, the mere computations or additions could not be prejudicial error.

[4] No doubt there are elements of uncertainty in this case, such as the fact of pro-

duction, the amount of production, its duration, the value of the oil, and perhaps in other respects; but the testimony offered was the best obtainable, and we think that under the authorities its weight was for the jury. There was, therefore, no error in the rulings complained of.

[5] The remaining assignments call for but brief consideration. The plaintiff in error contends that the only remedy for a breach of the collateral agreement was to declare a forfeiture of the contract. Neither the assignment of the oil and gas lease from the defendant in error to the plaintiff in error, nor the collateral agreement between the parties, contained a forfeiture clause; but, even if either or both did, it is well settled that such a clause is designed for the benefit of the lessor, and that he may take advantage of it or not as he chooses. He may declare a forfeiture of the contract, or he may, at his option, allow the contract to stand and sue for damages for the breach. 40 Corpus Juris, 1094; Empire Gas & Fuel Co. v. Pendar (Tex. Civ. App.) 244 S. W. 184; Junction Oil & Gas Co. v. Pratt, 99 Okl. 14, 225 P. 717.

[6] It is also contended that there was no proof that the well would not have produced oil at a depth of less than 4,600 feet. There was competent testimony tending to prove that the well would not produce in the quantities specified in the collateral agreement above the Miley sand, and in the absence of exceptions to the instructions we must presume that the issues were properly submitted to the jury.

[7] It is next contended that the assignment of the oil and gas lease and the collateral agreement created a partnership or joint adventure between the parties, and that an action at law will not lie in such cases. Under the terms of the agreement between the parties, the defendant in error agreed to perform certain services, and to receive as compensation therefor a portion of the profits realized, if any. Such an agreement between two corporations does not create a partnership, especially in the face of an express agreement that their contract shall have no such effect, as was the case here.

"It seems to us that this agreement cannot be construed to be a formation of a partnership in any sense. It purports to be a lease. It is recited in the instrument itself that it is a lease, and while, of course, such recitation would not make it a lease, if the elements of partnership were in the agreement, yet it seems to us that these elements are entirely wanting. Leases which provide for a division of the profits are of common occurrence in the business world. * * * It is true that there is an agreement here to share the profits; but, on the other hand, there is no agreement to share the losses, which is the ordinary test of a partnership. We know of no reason why a person, who has a house, or a farm, or any other character of property which he is desirous of leasing, shall not be allowed to make his own terms as to what the payment shall consist of, whether, in the case of a farm, it shall be for one-half of the gross amount of grain raised, or for one-half of the amount of grain raised after the expense of putting in and harvesting the crop are deducted, or for a certain number of bushels of grain, without regard to the amount raised, or for a certain specified sum of money. In each instance the amount agreed upon is intended as a payment for the use of the premises; and in the case at bar it seems that nothing more is imported into this contract than is generally found in contracts of lease." Z. C. Miles Co. v. Gordon, 8 Wash. 442, 36 P. 265.

[8] If it be conceded that the written agreement shows a joint adventure, it is well settled that one joint adventurer may sue another at law. 33 Corpus Juris, 866; Joring v. Harriss (C. C. A.) 292 F. 974-978; Keyes v. Nims, 43 Cal. App. 1-10, 184 P. 695.

[9] It is lastly contended that the destruction of the well without fault on the part of the plaintiff in error excused it from further drilling, or from further performance of its contract. We may assume that the destruction of the well was without fault on the part of the plaintiff in error, although there is some evidence to the contrary; but in any event the plaintiff in error entered into a positive agreement to properly drill the well down to the Miley sand, and the mere breaking of the machinery or other misfortune affords no excuse in law for the failure to perform its contract. Porto Rico Sugar Co. v. Lorenzo, 222 U. S. 481, 32 S. Ct. 133, 56 L. Ed. 277.

We find no error in the record, and the judgment is affirmed.