## TEXAS PAC. COAL & OIL CO. v. BARKER et al. (No. 1441.)

(Court of Civil Appeals of Texas. El Paso. April 5, 1923. Rehearing Denied May 17, 1923.)

1. **Mines and minerals ⬥78(7) — Petition for damages for breach of oil lease and contract to drill offset wells held sufficient as against general demurrer.**

A petition for damages for breach of contract occasioned by abandonment of production from drilled wells, and failure to drill wells on lands leased to defendant, so as to develop them for oil and gas, and by reason of failure to drill offset wells to prevent drainage of oil and gas by operators or wells on contiguous lands, and for specific performance, *held* sufficient as against general demurrer.

2. **Mines and minerals ⬥78(7)—Petition alleging oil and gas, or either, were drained from premises into well, held to allege facts placing defendant on notice that plaintiff intended to prove such facts.**

Where a petition in an action for damages for breach of an oil lease charged that defendant bound itself to begin within 30 days actual drilling for oil and gas. and give due protection against all offset wells drilled on adjacent property close enough to require an offset well on the leased land, etc., and charged that defendant breached the agreement, *held* that, though the petition did not allege that oil and gas, or either, had been drained from the property into the wells being operated in close proximity to leased land, the allegation of facts was to the same effect and sufficient to place defendant on notice that plaintiff intended to prove those facts.

3. **Mines and minerals ⬥78(7) — Statements leading to conclusion oil or gas has been drained from property will support cause of action for breach of agreement to save leased premises from waste.**

Because, from the nature of the subject-matter, it is impossible to allege or to prove with absolute certainty that a definite amount of oil or gas, or both, has been and is being drained from property, a statement of such facts as would reasonably lead to the conclusion that such was the fact is sufficient to support a cause of action for damages from breach.

4. **Mines and minerals ⬥78(1)—Lessee may be liable for failure to save premises from waste caused by wells.**

A cause of action may lie against a lessee for failure to save the leased premises from waste caused by outside wells, under express as well as implied agreement.

5. **Mines and minerals ⬥78(7)—Petition for damages from breach of contract to drill oil wells held to state proper items for damages.**

In lessor's action against gas and oil lessee, a petition alleging that the contract provided for actual drilling, prosecuted with diligence, until oil or gas was obtained in paying quantities, and that a gas well was drilled on the leased tract, which produced 3,000,000 cubic feet per day, which was not operated, and that defendant failed and refused to comply with a provision of the contract to dedicate a string of tools to the development of the tract, *held* to allege proper matters for damages.

6. **Damages ⬥153—Measure of damages need not be alleged.**

It is not necessary to allege the measure of damages, that being a matter of law for the court, but it is sufficient to state the facts.

7. **Mines and minerals ⬥78(1)—Contract to protect against offset wells on adjacent property held to mean protection against all wells.**

Where gas and oil lease required the lessee to protect the tract against "all offset wells" drilled on adjacent property, the lessor's obligation to protect was not limited to protection from adjacent draining wells, which were drilled after the execution and delivery of the contract, but extended to all wells, whether drilled prior to or after the execution of the contract.

8. **Mines and minerals ⬥78(1) — Protection against drainage of oil by adjacent offset wells held to include wells in existence when contract was executed.**

Where a gas and oil lease obligated lessee to begin a well within 30 days, and the tract was completely surrounded by paying wells at the date of the contract, *held*, that a provision requiring the lessee to protect the tract against "all offset wells" drilled on adjacent property meant particularly wells already in existence; the short time for beginning the wells accentuating the fact that the land was already being drained and that prompt action was necessary.

9. **Pleading ⬥376—Plaintiff held not required to prove royalty interests in oil and gas, where defendant set up facts in answer.**

Where, in a suit for damages for breach of contract to develop leased oil and gas premises, defendant lessee in its answer set up the fact of former lease and the royalty interests of both oil and gas provided for therein, it was not necessary for plaintiff to prove his royalty interests.

10. **Mines and minerals ⬥78(1)—Drilling of wells held to constitute proof whether leased premises were profitable to develop further.**

Provision in oil and gas lease that lessee would dedicate a string of tools for the development of the tract, and that he would operate same with diligence until the tract was developed, or until sufficient proof was made on the tract to convince the lessee that other portions of it were dry and unworthy of further tests, meant that the evidence which should constitute proofs should be wells drilled on the land itself, and not wells drilled around it, and one well producing gas drilled on one end of the tract would not constitute such proof.

11. **Mines and minerals ⬥78(7)—Owners of oil and gas land, not signing or acting on contract to develop land, held not entitled to recover for its breach.**

Those owning an interest in oil and gas premises, but not signing or acting on a con-

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

tract to develop it, *held* not entitled to recover thereunder for the lessee's breach.

**12. Judgment ⊙→235—Award of damages to co-plaintiff for proportionate interest, in action for, breach of contract, held error, where such owner did not execute the contract sued on.**

Where coplaintiff M. owned an interest in leased oil and gas premises, but did not execute a contract for the development of it, it was error to render a judgment for his proportionate interest in a suit for damages for breach of the contract.

**13. Specific performance ⊙→4—Decree for performance of contract to drill wells held error, where action for damages was adequate.**

In a suit for damages for breach of contract to develop oil and gas premises by the drilling of wells, decree for specific performance *held* error, where a suit for damages for breach of the contract afforded plaintiff full relief.

**14. Specific performance ⊙→75—Contract to develop oil and gas lands by drilling wells not enforceable.**

Equity will not enforce a contract to develop oil and gas lands by drilling wells.

On Motion for Rehearing.

**15. Appeal and error ⊙→263(8), 301, 1078(4)—Question of erroneous charge held waived under statute.**

Where the alleged error that there was no evidence to support the charge was not raised, either by exception to the charge or by motion for new trial nor in the brief, the error was waived under Vernon's Sayles' Ann. Civ. St. 1914, art. 1971, even though there was no evidence to support the jury's finding.

Appeal from District Court, Eastland County; Geo. L. Davenport, Judge.

Action by Mrs. Suda Barker and others against Texas Pacific Coal & Oil Company. Judgment for plaintiffs, and defendant appeals. Judgment affirmed, as reformed.

John Hancock and, W. B. Powell, both of Fort Worth, and C. C. Wightman, of Newton, for appellant.

Burkett, Orr & McCarty, of Eastland, for appellees.

HARPER, C. J. This suit was instituted by Mrs. Suda Barker, H. M. Pickering, a minor, and W. M. Pickering, against the Texas Pacific Coal & Oil Company, a corporation (and many others, individuals, on account of their interest in the subject-matter, but who disclaimed, and are finally disposed of by the judgment), for damages for breach of contract occasioned by abandonment of production from drilled wells, and failure to drill wells on lands leased to defendant oil company, so as to develop it for oil and gas, and by reason of failure to drill offset wells to prevent drainage of oil and gas by operators or wells on contiguous lands, and for specific performance. The cause was sub-

mitted to a jury by special issues, and resulted in verdict and judgment for $60,000, from which an appeal is perfected.

Propositions 1 and 2 are that the court erred in overruling general demurrer and special exceptions to plaintiff's petition. The specific points urged are:

(a) The petition does not allege that any damage was suffered by reason of defendant's alleged failure to properly develop said premises.

(b) It does not allege any cause of action for damages occasioned by drainage.

[1] The petition alleges: Ownership in fee simple of 112 acres of land. That December 31, 1919, a lease was executed, to the Texas Pacific Coal & Oil Company, providing for the development of said tract for oil and gas. That Bascom Morton and wife owned 16 acres, which had been leased to said company for the same purposes. That in order to avoid the necessity of drilling said tracts separately the defendant oil company agreed that both tracts be thrown together and be treated as one tract of 128 acres. That the merger contract provided:

"As a further consideration for the execution of this merger agreement the Texas Pacific Coal & Oil Company hereby agrees that within 30 days from the date of the delivery of this merger agreement to W. J. Oxford, general attorney for the Texas Pacific Coal & Oil Company, duly executed by all parties hereto, it will begin actual drilling of a well for oil and gas on some portion of said merged premises, and will prosecute said drilling with reasonable diligence until oil or gas is obtained in paying quantities, or until such depth has been reached as should obtain oil or gas in the Ranger field, taking into consideration the depth of other producing wells in said section of the country. And it further agrees that it will give due protection to said merged tracts of land against all offset wells drilled on adjacent property near enough to require an offset on these merged tracts, and it further agrees that it will dedicate at least one string of tools to the development of said merged tracts, and will keep the same operating until the said tract of land is developed, or until sufficient proofs have been made on said tract of land as to convince the said lessee that other portions of it are dry and unworthy of further tests."

That within the time required the oil company drilled a well upon the merged tract which has been producing gas in paying quantities, to wit, approximately 3,000,000 cubic feet per day since 1920. That the defendant company, in violation of this agreement to dedicate one string of tools to the development of said merged tracts, moved the string of tools away, has not drilled nor attempted to drill, nor has it permitted any other person to drill, for oil or gas thereon. That by implied agreement under the first contract and by express agreement under the merger contract it was the duty of de-

fendant to diligently drill offset wells to protect plaintiffs' lands from drainage. That wells had been drilled, naming them, in all over 20, in close proximity to the lines of the merged tracts on all sides, north, south, east, and west thereof. That oil and gas were found in them in paying quantities, and that some of them are yet producing enormous quantities of gas, which was known to defendant, and that notwithstanding defendant has failed and refused to develop the land for oil and to drill offset wells to plaintiffs' great damage. The prayer is:

"Wherefore, premises considered, the plaintiffs pray that the defendant Texas Pacific Coal & Oil Company be required to take due notice of the filing of this amended petition, and that upon final hearing hereof they have judgment of the court against said defendant for the said sum of $100,000 as damages because of said defendant Texas Pacific Coal & Oil Company's failure to develop and operate said premises, for oil and gas purposes and for failure to prevent the drainage of plaintiffs' land as aforesaid up to the trial of this cause."

As against general demurrer the petition is sufficient, but the special exception presents a more difficult question:

"That it fails to allege with any particularity the drainage of oil and gas from said premises or the amount thereof and its value."

[2] This petition does not allege that oil and gas, or either, have been drained from the premises into the wells being operated in close proximity to the leased land, but it would seem that the allegations of facts are to the same effect and sufficient to place defendant upon notice that the plaintiff intended to prove these facts. It is charged that by implied and express agreement defendant bound itself to begin within 30 days actual drilling for oil and gas, and give due protection to said merged tracts against all offset wells drilled on adjacent property close enough to require an offset well on these merged tracts, etc., and it is charged that defendant breached this agreement.

[3, 4] From the nature of the subject-matter it is impossible to allege or to prove with absolute certainty that a definite amount of oil or gas or both has been and is being drained from property, so a statement of such facts as would reasonably lead to the conclusion that such was the fact must be held to be sufficient to support a cause of action from damages for breach, unless the courts are to hold that as a matter of law there is no cause of action because the elements of damages are too uncertain and conjectural, at least not susceptible of that class of proof necessary to support a judgment for damages against a party breaching a contract to drill wells to protect against drainage. The courts of Texas recognize that a cause of action may be alleged and proven against a lessee for failure to act so as to save from waste the leased premises caused by outside wells under express, as well as implied, agreement. Humble Oil & Ref. Co. v. Strauss et al. (Tex. Civ. App.) 243 S. W. 528; Burt v. Deorsam, 227 S. W. 355.

[5] But this is not the only basis of recovery under the allegations of the pleadings. It is alleged that the contract provided for actual drilling prosecuted with diligence until oil or gas is obtained in paying quantities upon the land itself, and in this connection it is alleged that a gas well was drilled upon the merged tract which produced 3,000,000 cubic feet per day, which was not operated, and further that defendant had failed and refused to comply with that portion of the contract, to dedicate a string of tools to the development of the merged tracts. These are proper matters for damages aside from the question of drainage.

[6] It was not necessary to allege the measure of damages, but it is sufficient to state the facts, and the measure of damages is a matter of law for the court. I. & G. N. Ry. Co. v. Glover (Tex. Civ. App.) 84 S. W. 604; S. W. P. Cement Co. v. Kezer (Tex. Civ. App.) 174 S. W. 669.

The other exceptions made the predicate for assignments and propositions are simply in the nature of a general demurrer and are overruled for the reasons assigned above.

[7, 8] Next proposition, seventh:

"The court erred in overruling defendant's motion for an instructed verdict in its favor because the wells alleged by plaintiffs as having drained oil and gas from the premises covered by said merger contract were drilled and producing long prior to the execution and delivery of the contract and no obligation rested upon defendant to drill offset wells thereto."

This is not well taken. The language of the contract comprehends "all offset wells," whether drilled prior to or after the execution of the contract. But when we look to the situation of the parties, as we are permitted to do in interpreting the meaning of this contract, it clearly appears that the wells already in existence were the ones meant in particular. The merger contract charged defendant with beginning a well within 30 days, as asserted by appellant. The pleadings and evidence show that this tract of land was completely surrounded by paying wells at the date of the contract. This short time for beginning accentuates the fact that the land was already being drained, and prompt action was necessary to stop it by offset wells to those in operation.

[9] The court charged:

"In arriving at the amount of damages to be assessed, if any, you are instructed that you can only take into consideration the respective interests of plaintiffs in the land in controversy as from a royalty standpoint; that is to say, that plaintiffs' damages, if any, would be the amount of royalty payable to them either

in oil or gas, or the value thereof as held by plaintiffs, at this time."

The proposition is that the evidence fails to show the royalty interests of plaintiffs. This is not well taken, because appellee has set up in its answer the fact of the former lease and the royalty interests of both oil and gas provided for therein, so it was not necessary for plaintiff to prove it.

In answer to the ninth proposition there is affirmative evidence as to the amount and its value of the producing gas well, which is sufficient of itself to support the finding of the jury; therefore the court did not err in refusing to instruct for defendant for failure of evidence in this respect.

The thirteenth and fourteenth urge that there is no proof of the number of offset wells which should have been drilled, nor the amount of production that would have been obtained therefrom, and that for this reason the court should have instructed for the defendant. The evidence as to these is sufficient under the rules above noted to carry the case to the jury.

As to the manner of proving damages, we refer to the cases of Burt v. Deorsam (Tex. Civ. App.) 227 S. W. 354; Blair v. Clear Creek Oil Co., 148 Ark. 301, 230 S. W. 286, 19 A. L. R. 430; Steel v. Am. Oil Co., etc., 80 W. Va. 206, 92 S. E. 410, L. R. A. 1917E, 975; Humble Oil & Ref. Co. v. Strauss (Tex. Civ. App.) 243 S. W. 536. The court's charge is the proper one on the measure of damages in this class of cases. L. R. A. 1917E, 981; Blair et al. v. Clear Creek Oil & Gas Co., 148 Ark. 301, 230 S. W. 286, 19 A. L. R. 430.

This question arises in this case first upon the right to recover damages for failure to develop and to operate the gas well already brought in, and then under the provision of the merger contract providing for offset wells. The appellant by express contract has bound itself to begin actual drilling of a well for oil and gas on *some portion of said merged premises* and will prosecute such drilling with reasonable diligence until oil or gas is obtained in paying quantities, or until such depth has been reached as should obtain oil or gas in the Ranger field, taking into consideration the depth of other producing wells in said section of the country. And in this respect:

"It is further agreed that it will dedicate at least one string of tools to the development of said merged tracts of land, and will keep same operating with diligence on said tract until it is developed or until sufficient proofs have been made on said tract * * * as to convince the lessee that other portions of it are dry and unworthy of other tests."

[10] The leased tract of land is shown to be 2,324 varas long and 287 varas wide, and appellant urges that it is to be the sole judge of when it will be profitable to further develop the tract. The contract specifies that it shall, however, make proofs by drilling upon the land. This means that the evidence which shall constitute proofs shall be wells drilled upon the land itself, and not wells drilled around it, as contended by appellant, and one well, producing gas, drilled on one end of the tract, could hardly be held to constitute proofs. So, unless relieved from drilling other wells by some matter not revealed by this record, further compliance with the provision of the contract quoted would be necessary to constitute proofs. Appellant must be held to be bound by its contract, and it is in no position now to say that it had decided for itself that the tract was dry, because it has wholly failed to perform except as to drilling one well. As to offset wells, the merger contract clearly indicates where they are to be drilled and their depth, etc. Gibson v. Texas Co. (Tex. Civ. App.) 239 S. W. 671.

[11, 12] By another assignment and proposition it is contended that it appears from the face of the contract that it was a joint contract, and that a number of the owners thereof, parties named as plaintiffs, did not execute it, and for that reason appellant could not be required to perform. The facts disclose that each party named in the merger contract has a distinct estate in the leased land. Those who own an interest, not signing or acting upon the contract, are not entitled to recover. 13 Corpus Juris, 306, § 128. This contract does not show upon its face to be a joint contract, as was the case in Watson et al. v. Cloud et al. (Tex. Civ. App.) 225 S. W. 807; but it does appear that M. H. Pickering, one of the plaintiffs, who owned a definite interest in the lands, and for whom judgment was rendered for his proportionate share of the whole, did not execute the contract. Therefore it was error to render judgment for him, but the record reveals that he owns one twenty-fourth interest in the 112-acre tract, so the judgment in his favor will be eliminated upon that pro rata basis. It was not error to permit witnesses to testify to their respective interests. There is no question of title involved.

[13, 14] The part of the judgment decreeing specific performance is error, for the reason that it appears from the nature of the contract that a suit for damages for breach of the contract will afford appellee full relief; besides, a court of equity cannot properly compel specific performance of a contract of this character. Lone Star Salt Co. v. T. S. & L. Rev. Co., 99 Tex. 445, 90 S. W. 863, 3 L. R. A. (N. S.) 828; Carrico v. Stevenson (Tex. Civ. App.) 135 S. W. 260. This assignment and proposition is therefore sustained, and the decree of the trial court reformed in this respect.

We have endeavored to pass upon all of the points suggested by appellant's 74 propositions, without specifically mentioning each

one, and, finding no reversible error, the case will be reformed in the respects indicated, and, as reformed, affirmed.

### On Motion for Rehearing.

[15] The appellant, upon motion for rehearing, suggests that:

"It was error for the values of oil and gas, as to drainage, to have been submitted, jointly, in questions numbered 9 and 10, since no proof was made of the value of the oil."

In the appellant's brief the question of failure to introduce evidence as to the "amount and value of oil" was made the basis for the proposition that the court erred in refusing to give the requested peremptory instruction for defendant. The opinion is confined to the latter, and not to the question as to whether it was error to submit the questions, because there was no evidence to support the charge. This question was not raised, either by exception to the charge or by motion for new trial, nor in the brief; so, even though there may not be evidence to support a finding for the amount and value of the oil, the question of erroneous charge has been waived under the statute. Article 1971, Vernon's Sayles' Revised Civil Statutes.

The motion is overruled.