CLEAR CREEK OIL & GAS COMPANY *v.* BUSHMAIER.

Opinion delivered November 5, 1923.

MINES AND MINERALS—OIL AND GAS LEASE—DUTY TO EXPLORE.—Where an oil and gas lease authorized the lessee to elect to pay a yearly rental instead of drilling a well, the lessors cannot recover damages for failure of the lessee to commence to drill.

Appeal from Franklin Circuit Court, Charleston District; *James Cochran,* Judge; reversed.

*E. L. Matlock* and *Hill & Fitzhugh,* for appellant.

1. The verdict was contrary to the law and the evidence. This case grows out of a misapplication of this court's decision in the Blair case, 148 Ark. 301. That case recognized the principle that there is an implied covenant on the part of the lessee to protect the lessor against drainage, and, in default thereof, the

lessor may recover damages, but only when there has been a demand made within a rental period, with notice of intention to refuse to accept further rentals, and to declare a forfeiture for noncompliance with such demand. *Id.* 310; 89 S. E. 12; L. R. A., 1917-A, 171. In this case the lessor continued to accept rentals for four years, and until the cancellation of the lease, after the alleged demand for a protection well. See 177 Pac. (Okla.) 104.

2. The action is barred by limitation. C. & M. Digest, § 6950; 148 Ark. 301-310; 47 Ark. 317; 49 Ark. 468; 112 Ark. 6; 115 Ark. 84; 91 Ark. 162. We do not believe this action is controlled by the second paragraph of the statute, *supra,* but, if it is, appellee's case is not bettered. 52 Ark. 240; 92 Ark. 406; 107 Ark. 330.

3. There was no duty to drill a protection well, if the cost of producing gas and the market condition for its sale were such, at the time the plaintiff was entitled to have a protection well, that the defendant could not sell the gas so produced at a profit and without loss. 140 Fed. 801; 177 Pac. 104; and authorities there cited.

*Chew & Ford,* for appellees.

It is an implied covenant in every lease of this kind that the lessee will make diligent search and operation of the leased premises. 97 Ark. 167; 72 C. C. A. 213. The acceptance by appellees of the yearly rentals did not estop them from insisting that the lessee should comply with the terms of its obligations to explore and develop the leased premises. 148 Ark. 301.

HUMPHREYS, J. This suit was instituted by appellees against appellant in the circuit court of Crawford County, to recover damages in the sum of $2,000 for the alleged failure of appellant to explore and develop gas wells on certain lands in said county leased by appellees to appellant. The venue was changed to the Charleston district of the circuit court of Franklin County, where the cause was tried upon the pleadings, evidence, and instructions of the court, resulting in a verdict and con-

sequent judgment against appellant in the sum of $390, from which is this appeal.

The suit was based upon a written lease of the lands therein described, which was executed in order that the oil, natural gas, and mineral resources thereon might be discovered and developed. The provisions of the lease necessary to a determination on the vital question involved on this appeal are as follows:

"That said first parties (appellees here) for and in consideration of the sum of one dollar, cash in hand paid, and in further consideration of the agreements and covenants hereinafter set forth to be kept and performed by said second party, have granted, demised and let, and do by these presents grant, demise and let unto the second party, its successors and assigns, the premises hereinafter described and for the terms specified herein, with the exclusive right and privilege of entering into, possessing, holding, drilling into, mining therein and prospecting for oil, natural gas and other minerals, * * * and also the further right and privilege of making such further use of said premises as it may deem necessary in developing, operating and exploring the mineral resources thereof, the following described lands, to-wit:" [Here follows a description of the land.]

"That if the said second party shall market any gas from any well producing gas only, then the parties of the first part shall receive therefor at the rate of two hundred dollars per annum for each well, quarterly in advance. Should any minerals of commercial value be discovered in paying quantities on the within-described premises, and the development and production of same by said second party be carried on with reasonable diligence, then the lease shall remain in full force and effect. * * *

"That if no drilling operations are begun on the premises within one year, all right and obligations secured under the lease shall cease upon notice in writ-

ing being served on the second party by the parties of the first part, unless the second party shall elect to continue the lease in force as to any and all parts of the premises by paying to the parties of the first part an annual rental of seventy dollars for all of said premises, provided that when such well is drilled the rental shall cease. All payments to be made at the Alma Bank to the credit of the parties of the first part.

"It is hereby further agreed that the said second party, its successors and assigns, shall have the right at any time to surrender and terminate this lease."

The record reveals that, about a year after the execution of the lease, wells were drilled by appellant on lands adjoining those leased from appellees, which produced large volumes of gas, and near enough to appellees' lands to drain them; but, as this suit was not brought to recover damages for failure to drill protection or offset wells on appellee's lands, or for the gas drained off of their land through wells on adjoining lands, it is unnecessary to set out the testimony showing the date those wells were drilled or the approximate amount of gas produced by them from time to time. Appellant made no effort whatever to drill a well or wells upon the premises leased from appellees prior to the 10th day of February, 1922, at which time it canceled the lease. Notwithstanding the fact that appellees requested appellant to drill protection wells after it drilled wells on adjoining lands, appellant paid and appellees accepted yearly rentals of $75 a year upon the lands for the years 1917, 1918, 1919, 1920 and 1921.

The acceptance of the rents from year to year prevented a breach of the contract growing out of failure to drill wells upon the leased premises. The contract provided that, in case appellant should elect to pay $70 per annum rent upon the premises instead of drilling a well thereon, such payment should have the effect of continuing the lease in force. The correct interpretation of the contract is that the stipulated rent should remuner-

ate appellees for delays in drilling. In construing similar provisions in an oil and gas lease this court said, in the case of *Blair* v. *Clear Creek Oil & Gas Co.,* 148 Ark. 301, that ''the lease expressly authorizes the lessee to elect to pay the yearly rental, instead of drilling. Hence, the lessors cannot recover damages for failure of the lessee to commence exploration for gas. If, however, the lessee commences to explore for gas, it must exercise due diligence in drilling, and there is an implied covenant on its part to do so. *Mansfield Gas Co.* v. *Alexander,* 97 Ark. 107; *Lawrence* v. *Mahoney,* 145 Ark. 310.'' The payment and acceptance of the annual rental provided for in the contract had the effect of preventing a breach for failure to develop the lease during the term covered by the rental. This interpretation of the contract does not militate against the lessor's right to sue for damages on account of the breach of an implied covenant not to drain his land during the period of delay. In order to maintain a suit upon such an implied covenant, however, a lessor could not continue to receive the specified rents for delay. In that event it would be his duty to declare a forfeiture of the implied covenant and refuse to receive rents for delay. That was what Mrs. Blair did in the case of *Blair* v. *Clear Creek Oil & Gas Co., supra.* In the instant case, however, damages were not claimed for the removal of gas through wells on adjoining lands or for a failure to drill protection wells. The action was grounded upon an alleged breach for failure to develop the leased premises.

For the error indicated the judgment is reversed, and the complaint of appellees is dismissed.