BURTON *v*. MILLER.

## Opinion delivered November 2, 1925.

1. MINES AND MINERALS—ESCAPE OF OIL FROM WELL.—Oil which escapes from a well running wild is personal property and subject to reclamation after its involuntary escape from the owner's possession.

2. MINES AND MINERALS—RIGHT TO RECOVER ESCAPING OIL.—Where the oil well of plaintiffs' ran wild, as did another well belonging to a third party, and the oil from each well flowed into defendant's pick-up station, where he impounded the oil, plaintiffs were entitled to recover the value of so much of the impounded oil as could be shown with reasonable certainty to have come from their well into defendant's possession.

3. MINES AND MINERALS—RIGHT TO RECOVER ESCAPING OIL.—Where plaintiffs' oil well ran wild as did a well of another, and the oil from each well flowed toward defendant's pick-up station, where he impounded the escaping oil, the mere difficulty of determining what quantity of the oil came from plaintiffs' well did not preclude plaintiffs from recovering if proof can be made with such reasonable certainty as to form the basis of calculation.

Appeal from Union Circuit Court; *L. S. Britt*, Judge; reversed.

*Patterson & Rector*, for appellant.

*Mahony, Yocum & Saye* and *Marsh & Marlin*, for appellee.

SMITH, J. Mrs. Janet Hughes owned a forty-acre tract of land, which she leased to W. G. Burton, trustee, to explore for oil and gas. A well was drilled, and a gusher came in, its capacity being estimated as high as seventy to one hundred thousand barrels of oil per day. The well blew its connections loose and "ran wild," as witnesses expressed it, for something over three days. While the well was running wild, M. M. Miller, as trustee for certain persons, erected what is known as a "pick-up station." This consisted of a dam across a small creek, the object being to impound the waters coming down the creek together with such oil as might float on the top thereof and to remove the oil by steam pumps to storage pits, where it could be sold.

When the Burton well broke loose, a large body of men were employed by him to build dams and levees on the lower side of the well to collect the oil which was escaping from the casings. Two large dams and a firewall were constructed by Burton, and he had impounded behind these levees a large quantity of oil, which witnesses in his behalf estimated at from one hundred to one hundred and twenty-five thousand barrels. On the night of March 13, 1923, the dams gave way and all of this oil escaped and ran down the creek to Miller's pickup station. A quantity of oil, estimated at thirty-five thousand barrels, was collected by Miller and sold by him to the Standard Oil Company of Louisiana for $30,-031.85, but when that company was advised that the oil was claimed by Burton the company refused to pay Miller, whereupon he brought suit to enforce payment. Burton, as owner of the lease, and Mrs. Hughes, as owner of the land having a royalty interest in the oil, became parties to this litigation.

The Burton well was located on the southeast quarter of the northwest quarter of section 28, township 15 south, range 16 west, in Ouachita County, and there was another well located on the southeast quarter of the southwest quarter of the same section, known as the Vitek well, and there is a well-defined small creek running through section 28, entering that section about the center of the north line thereof, and leaving it near the center of the southeast quarter thereof, where it empties into Smackover Creek, which flows into Ouachita River. There is a branch or small tributary of the creek heading in the northwest portion of the southeast quarter of the northwest quarter of section 28, and running southeast of the Burton well and emptying into the main creek. There is another branch heading in the southeast corner of the northwest quarter of the southwest quarter of section 28, flowing east and just north of the Vitek well and emptying into the main creek just above the pick-up station which Miller erected.

The Burton well "ran wild" on Saturday morning, and Miller began the construction of his pick-up station on the following Monday morning and completed it about one o'clock that night, and the oil was coming down the creek towards the pick-up station in a stream which the witnesses said was about knee-deep to a mule. On the following Tuesday or Wednesday the Vitek well also blew out its connections and "ran wild" for several days.

There is a conflict in the testimony as to where the oil from the Vitek well ran, and it is insisted on behalf of Miller that the oil from the Vitek well united in the creek with oil from the Burton well and the commingled oil from the two wells flowed into the pick-up station. On behalf of Burton and Mrs. Hughes it is insisted that the oil from the Vitek well flowed in another direction and did not flow into Miller's pick-up station. The owners of the Vitek well did not join in the suit against Miller.

At the conclusion of all the testimony the court directed a verdict in favor of Miller, after refusing all the instructions asked in behalf of Burton and Mrs. Hughes, and they have appealed.

It appears from the facts stated that the case is substantially identical with the recent case of *Crosson* v. *Lion Oil & Refining Co.,* ante p. 561, except for the testimony here that oil belonging to more than one person flowed into the pick-up station. In the Crosson case, *supra,* we said: "In the case at bar the undisputed facts show that the oil was not voluntarily allowed to escape, and that the owner asserted its claim to it as soon as it ascertained that the oil had escaped and was in the possession of the defendants. There are no facts or circumstances in the record from which it might be inferred that the plaintiff in this case is estopped from claiming the oil. As soon as it was found out that the oil was escaping, the pipe-line was repaired, and the plaintiff asserted title to the oil which was impounded by the defendants in their mud-pit."

What was there said is applicable here. The oil was not voluntarily allowed to escape, and Burton and Mrs. Hughes asserted their title to the oil at once. The oil had become personal property and subject to be reclaimed after it had involuntarily escaped from the owner's possession.

The jury might have found, had the case been submitted to them, that all of the oil impounded at Miller's pick-up station did not flow from the Burton well and that some of it did in fact flow from the Vitek well. Such a finding would make it difficult to determine the quantity of oil for which a recovery might have been had. The burden would be on Burton and Mrs. Hughes to show the quantity of oil from their well which had been picked up by Miller, and they could not recover for a larger quantity than was shown with reasonable certainty to have come from their well. But they were entitled to recover the value of such oil as could be shown with reasonable certainty to have come from their well into Miller's possession.

The case of Blair v. Clear Creek Oil & Gas Co., 148 Ark. 301, involved a recovery of damages for permitting gas to be drained by an adjacent owner, the suit being brought against a lessee whose duty it was to have developed a lease on land from which the gas was being drained. It was there contended that no recovery could be had because it was not possible to determine the quantity of gas drawn from the plaintiff's land. We recognized this difficulty, but we there said: "What is the measure of damages recoverable for drainage through wells operated by defendants on their lands near the plaintiff's boundary line may be difficult of determination and troublesome to ascertain, but that is no bar to relief in such cases."

So here it may be difficult to determine what quantity of oil came from the Burton well, as distinguished from the Vitek well, but this difficulty will not prevent

a recovery if the proof can be made with such reasonable certainty as to form the basis of calculation.

In the case made Burton and Mrs. Hughes were the owners of the oil which came from their well, and they were entitled to recover the value of so much of the oil as could with reasonable certainty be shown to have come from their well into Miller's possession.

It follows, from what we have said, that the court erred in directing a verdict in Miller's favor, and the judgment of the court below will be reversed, and the cause remanded with directions to submit the case to the jury under instructions conforming to what we have here said. Of course, as was pointed out in the Crosson case, *supra,* Miller would have the right to offset against any recovery the necessary and reasonable expenses incurred by him in impounding and preserving the oil.

SMITH, J., (on rehearing). In the petition for rehearing it is insisted that the facts in the instant case are not sufficiently like those in the case of *Crosson* v. *Lion Oil & Refining Co.* to be entirely controlled by it. It is pointed out that in the former case the oil had escaped from a pipe-line, thus indicating that it had previously been reduced to possession, while here only a portion of the oil had been impounded by the dam or levee which the owner of the well had built, whereas the larger part of the oil escaping from plaintiffs' well was never impounded by the levee but was spread over a large territory by the force of the gas in the well which caused it to run wild.

It is the opinion of the majority—in which the writer does not concur—that no distinction is to be made between the oil that was impounded by the levee and the balance of it which escaped from plaintiffs' well without being impounded. It was all plaintiffs' oil, and they had the right to recover it from any one found in possession thereof, or to sue for its conversion anyone who had appropriated it. This is true because plaintiffs by their efforts had brought the oil to the surface and had not abandoned it, but, on the contrary, asserted their title

at all times to it, and they therefore have the right to recover the value of so much of the oil escaping from their well as they can show was converted by appellees.

The petition for rehearing is therefore denied.