## HUMPHREYS OIL CO. et al. v. TATUM et al.

Circuit Court of Appeals, Fifth Circuit.
June 18, 1928.

Rehearing Denied July 27, 1928.

No. 4992.

1. Mines and minerals ⬤➠74—Assignees of lessee of oil property must exercise reasonable diligence for development of property and protection thereof from drainage.

Though assignees of lessee under oil lease had right to postpone drilling by payment of annual rent, and were not obliged to operate at loss, after commencing operation, they were under duty to exercise reasonable care and diligence to develop the property for oil and gas and to protect it from drainage by wells which might be sunk on surrounding tracts.

2. Mines and minerals ⬤➠74—Issue of breach by lessee's assignees of implied duty to protect lessor's oil property from drainage held for jury.

Issue of breach by lessee's assignees of implied obligation to develop property for oil and gas and to protect the property from drainage by wells on surrounding tracts *held* for jury, under evidence in lessor's action for damages against lessee's assignees, who themselves were drilling wells in surrounding area.

3. Mines and minerals ⬤➠74—Oil lease contains implied covenant that lessee will not injure lessor, and assignees of lessee drilling on adjoining lands must use reasonable care to protect lessor's property.

There is an implied covenant in lease of oil property that lessee will do nothing to impair value of lease to the lessor and lessee's assignees, who drilled on adjoining land, were required to use reasonable care to protect lessor's property from damage.

In Error to the District Court of the United States for the Western District of Texas; Charles A. Boynton, Judge.

Suit by Joe Will Tatum and others against the Humphreys Oil Company and another. Judgment for plaintiffs, and defendants bring error. Affirmed.

Clyde A. Sweeton, of Houston, Tex. (C. S. Bradley, of Groesbeck, Tex., and Vinson, Elkins, Sweeton & Weems, of Hous-

ton, Tex., on the brief), for plaintiffs in error.

N. B. Williams and Clay McClellan, both of Waco, Tex. (Williams, Williams, McClellan & Lincoln, of Waco, Tex., on the brief), for defendants in error.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

FOSTER, Circuit Judge. This suit was brought by appellees, Joe Will Tatum and his wife, Lizzie Tatum, and L. C. Puckett and G. Stratton, against the Humphreys Oil Company and the Pure Oil Company, appellants, to recover damages alleged to have been caused by the failure of appellants to properly develop, and to protect from drainage by other wells, in close proximity, some 25 acres of land in Limestone county, Tex., in what is known as the Mexia oil field, to which Tatum and his wife held the fee-simple title. There was a verdict in favor of appellees in the sum of $10,000, on which judgment was entered. Error is assigned to certain portions of the general charge and to the refusal of the court to direct a verdict in favor of appellants. These errors may be considered together.

The undisputed material facts are these: Appellees Tatum and wife executed a lease on about 25 acres of land, which formed the northwest half of a lot of 50 acres owned by them, to A. H. Bell, on July 19, 1919, the lease to remain in force for a term of five years from date and as long thereafter as oil or gas or either of them would be produced from the said lands by the lessee, for a consideration of $125 and a further consideration of one-eighth of all the oil produced and saved from the leased premises, to be delivered free of cost to the lessor in pipe lines connected with any wells that might be drilled. The lease also contained the stipulation that, if no well was commenced on the land on or before July 25, 1920, the lease should terminate as to both parties, unless the lessee should pay the sum of $25 per. year, to operate as rental, for the privilege of deferring the commencement of a well. The lease was transferred through various parties to the Humphreys Oil Company, and in turn was taken over and operated by the Pure Oil Company, which succeeded to the business and assets of the Humphreys Oil Company. Tatum and wife transferred one-half of their rights under the lease to the other appellees, Puckett and Stratton. A well was drilled by the Houston Oil Company on what is known as the McCraw lease, adjoining the Tatum property, about 180 feet from the line. After this a well known as Tatum No. 1 was drilled by appellants in the northeast corner of the Tatum property, 172 feet south of the north line and 180 feet west of the east line, and completed April 20, 1922, to a depth of 3,114 feet. This was an offset well to the McCraw well. It came in with an initial production of 94 barrels. Another well known as Tatum No. 2 was drilled 320 feet east of the west line and 460 feet south of the north line of the property, which was completed on October 8, 1922, to a depth of 3,122 feet, and came in with an initial production of 47 barrels. Appellants own or control leases on the land on three sides of the Tatum property, and five wells were drilled by them shortly before Tatum well No. 1 was drilled, and two other wells were drilled shortly thereafter. All of these wells were drilled about six months to a year before Tatum No. 2, and were producing. Two of them were within 200 feet of the Tatum land, and the others more than 200 feet but less than 600 feet distant.

The testimony was conflicting as to how far a well in the Mexia field would drain; some testimony tending to show that it would drain to a distance of 600 feet each way, and other testimony tending to show that drainage would not exceed 200 feet. There was also testimony tending to show that there were about 125,000 barrels of oil under the Tatum land, and that three, or probably four, wells were necessary to remove it. There was further testimony tending to show that it had cost about $48,000 to drill and equip the Tatum wells and about $14,000 to lift the oil; that some 53,000 barrels of oil, worth $1.50 per barrel, or a total of $79,500, had been produced by the two wells, of which appellants received $69,603.77, after deducting the one-eighth royalty, which showed a profit to them of $6,861.75. There was also testimony tending to show that the operation of the Tatum wells caused appellants a loss of approximately $68,000, but this was arrived at by allocating to those wells ad valorem and production taxes, general expenses, and other overhead expenses, and certain losses, and that this allocation was made arbitrarily as to all the wells operated by appellants without regard to the amount of oil produced from each well. It is not quite clear how many wells appellants owned in the Mexia field, but there were probably 200 to 230. Some of these were large producers. A well known as Rogers No. 2 came in with an initial production of 3,500 barrels.

[1, 2] In submitting the case to the jury, the court charged, in substance, that an implied obligation rested upon appellants to exercise reasonable care and diligence in good faith to develop the property for oil and gas and to protect the same from drainage by wells that might be sunk on surrounding tracts, but that appellants were under no duty to drill and operate at a loss in developing the lease.

In the view the District Court took of the law, it was not error to submit the case to the jury on the evidence before it.

Conceding that appellants had the right to postpone drilling by payment of the annual rent, and were not obliged to operate at a loss, after commencing development it was their duty to prosecute it with reasonable diligence in good faith and to drill as many wells as might be necessary to that end.

The Supreme Court of Texas, so far as we are advised, has not yet passed upon the question as to whether there is an implied condition in an oil or gas lease that the lessee must protect the land from waste by drilling offset wells to prevent drainage by other wells in adjacent territory, but Texas Courts of Civil Appeals have so held, and the general trend of jurisprudence in other states is the same. Guffey Pet. Co. v. Jeff Chaison Townsite Co., 48 Tex. Civ. App. 555, 107 S. W. 609; Humble Oil & Ref. Co. v. Strauss (Tex. Civ. App.) 243 S. W. 528; Texas Pac. Coal & Oil Co. v. Barker (Tex. Civ. App.) 252 S. W. 809; Texas Co. v. Ramsower (Tex. Civ. App.) 255 S. W. 466; Steele v. Am. Oil Dev. Co., 80 W. Va. 206, 92 S. E. 410, L. R. A. 1917E, 975; Blair v. Clear Creek Oil & Gas Co., 148 Ark. 301, 230 S. W. 286, 19 A. L. R. 430; Thornton, Oil & Gas (4th Ed.) pars. 98, 104, 107.

[3] The case here presented is much stronger in favor of appellees than if the draining wells had been drilled by third persons. There would certainly be an implied covenant that the lessee would do nothing to impair the value of the lease to the lessor. If appellants saw fit to drill on their own adjoining land, it was their duty to use reasonable care in good faith to protect appellees from damage caused thereby.

We are content to follow the Texas decisions above cited, and conclude that the District Court correctly charged the law.

There are a number of other assignments of error, but they are without merit, and need not be discussed. The record presents no reversible error.

Affirmed.